# 97 DTA 165

TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN

LUIS MALAVE
Recurrente-Peticionario

v.

JUNTA DE CONTABILIDAD
Recurrida

Núm. KLRA-97-00170

San Juan, Puerto Rico, a 11 de agosto de 1997

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Giménez Muñoz y Miranda De Hostos

Alfonso de Cumpiano, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Se nos solicita por el recurrente, Sr. Lucas Malavé, la revocación de la determinación tomada por la recurrida, Junta de Contabilidad, mediante la cual se le impuso al recurrente como sanción la prohibición de renovar su licencia de contador público autorizado por un término de diez (10) años, ante una querella por conflicto de interés.

En síntesis, el recurrente alega que la Junta de Contabilidad erró al no aplicar la doctrina de cosa juzgada, al determinar que los cargos imputados configuraban conflicto de interés de su parte, al carecer de jurisdicción por dilación en procesarle, al considerar un informe que no le fue notificado y al imponer una sanción severa e irrazonable.

Analizados los planteamientos de las partes a la luz del derecho aplicable, procede expedir el auto a los únicos fines de modificar la sanción impuesta, y así modificada, confirmar la decisión de la Junta de Contabilidad.

## I

Da origen a este caso la querella presentada contra el C.P.A., Sr. Lucas Malavé, imputándole conflicto de interés en violación al Reglamento de Etica de los Contadores Públicos Autorizados, por haber celebrado un contrato de arrendamiento con la Compañía de Desarrollo Cooperativo y haber comprado bienes de ésta, al mismo tiempo que actuaba como auditor externo de la referida Compañía de Desarrollo Cooperativo.

Previo al proceso administrativo ante la Junta de Contabilidad, que culminó en la resolución aquí recurrida, la Oficina de Etica Gubernamental formuló en 1991 querella contra el Sr. Lucas Malavé, consistente en diez (10) cargos por violar la Ley de Etica Gubernamental. Dichos cargos se basaron en que la firma social García, Malavé & Landa celebró nueve contratos de auditoría y contabilidad con diversas agencias del Gobierno, sin la debida dispensa del Gobernador, aún cuando el señor Malavé era miembro de la Junta de Gobierno de la Autoridad de Teléfonos. Además, en que adquirió de la Compañía de Desarrollo Cooperativo el Centro Comercial Hermanas Dávila en Bayamón, sin obtener la referida dispensa. La Oficina de Etica Gubernamental impuso al señor Malavé $5,000.00 de multa en cada uno de los cargos, para un total de $50,000.00. El Tribunal Superior, Sala de San Juan (Hon. Hiram A. Sánchez Martínez, Juez de Apelaciones) en sentencia de 3 de enero de 1994, modificó y redujo a $500.00 la sanción de $5,000.00 impuesta al señor Malavé por haber otorgado el contrato de compraventa del Centro Comercial, y confirmó la decisión en todos los demás extremos. En resolución de 3 de junio de 1994 (CE-94-232), el Tribunal Supremo denegó la solicitud de *certiorari* para revisar esa determinación.

La querella ante la Junta de Contabilidad se presentó el 21 de agosto de 1995 y luego de los correspondientes trámites administrativos, incluyendo la celebración de vista administrativa el 14 de agosto de 1996, se emitió por la Junta de Contabilidad la resolución recurrida, el 14 de enero de 1997.

Examinemos los errores imputados por el recurrente a la Junta de Contabilidad en su determinación en este caso.

## II

En apoyo de su alegación de que debió aplicarse la doctrina de cosa juzgada, el recurrente sostiene que los dos cargos por los cuales la Junta de Contabilidad le sometió a este proceso, fueron adjudicados anteriormente mediante la sentencia del Hon. Hiram A. Sánchez Martínez, relativa a las violaciones a la Ley de Etica Gubernamental. No procede su planteamiento.

La defensa de cosa juzgada, que se rige por los postulados del Código Civil, procede cuando median los siguientes requisitos: 1) que se trate de la misma causa de acción o de dirimir asuntos que pudieron ser adecuadamente resueltos en un pleito anterior, y 2) que las partes litigantes en el pleito posterior sean las mismas que comparecieron anteriormente y estén participando en la misma calidad en la que lo hicieron. Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343, *A P. General Contractors v. Asoc. Caná,* 110 D.P.R. 753 (1981). En el ámbito administrativo, en el que también aplica, ésta consiste de tres vertientes: 1) interagencial o entre determinaciones tomadas por distintas agencias; 2) intragencial o respecto a determinaciones tomadas dentro de la misma agencia, y 3) entre el tribunal y la agencia. La aplicabilidad de esta defensa en el foro administrativo es flexible y depende de la

naturaleza de la cuestión planteada. Si se trata de asuntos que afectan la política pública, su aplicación no será automática. *Acevedo Santiago v. Western Digital Caribe, Inc.*, 140 D.P.R. ___ (1996), **96 J.T.S. 42**, pág. 880; *Rodríguez Ochoa v. Machado Díaz*, 136 D.P.R. ___ (1994), **94 J.T.S. 82**, pág. 12004 y *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978).

En este caso, no aplica la defensa de cosa juzgada por no haber identidad de personas, ni identidad de causas. Se trata de dos cuerpos de leyes con propósitos distintos, aunque afines, cuya implantación corresponde a distintas entidades. En el proceso administrativo ventilado por la Oficina de Etica Gubernamental y que dio base a la sentencia invocada por el recurrente, se le imputó a éste haber otorgado diez (10) contratos con organismos gubernamentales, mientras era miembro de la Junta de Gobierno de la Autoridad de Teléfonos. Uno de éstos fue el de la compraventa a una corporación pública del Centro Comercial Hermanas Dávila. Las violaciones imputadas fueron bajo la Ley de Etica Gubernamental, siendo partes en ese proceso la Oficina de Etica Gubernamental y el recurrente.

En el asunto objeto de este recurso, se trata del ejercicio de la facultad disciplinaria por la Junta de Contabilidad, bajo la ley y el reglamento aplicables a los contadores públicos autorizados. Las violaciones imputadas al señor Malavé de conflicto de interés se basaron en su función dual como auditor externo de la Compañía de Desarrollo Cooperativo y al mismo tiempo convertirse en arrendatario y comprador de bienes, el centro comercial en cuestión, de dicho organismo. Las partes en este proceso fueron la Junta de Contabilidad y el recurrente.

No hay razón alguna para sustentar que ambos organismos debían o podían llevar el proceso conjunto, bajo las leyes que administran independientemente. En definitiva, no hay la identidad de personas, ni la entidad de causas, ni procedía llevar los procesos de una y otra ley, como una sola violación, por lo que la defensa de cosa juzgada es inaplicable.

El recurrente pretende obviar su responsabilidad frente a las violaciones imputadas, haciendo un recuento de los eventos que culminaron en el arrendamiento y la compraventa del centro comercial, para implicar que no tuvo ingerencia directa con esas transacciones, sino su firma García, Malavé & Co. También alega que al momento de la subasta y del cierre de la compraventa, 1987, era otra la firma contratada para hacer la auditoría de la Compañía de Desarrollo Cooperativo.

El récord sustenta que en 1985 suscribió contrato de arrendamiento de Isaacar, Inc., cuyo Presidente era el señor Malavé, con la Compañía de Desarrollo Cooperativo. Este contenía la cláusula de preferencia de compra, utilizada posteriormente en 1987 por el recurrente para adquirir la propiedad en cuestión. Su participación en las transacciones que redundaron en su beneficio, mientras hacía función dual de auditor y negociador, surge claramente del expediente.

Las alegaciones del recurrente de que la Junta de Contabilidad no consideró la sociedad profesional García, Malavé & Co. como persona independiente de sus socios, ni consideró a Isaacar, Inc. como corporación independiente de sus accionistas, no le libera de su responsabilidad de no incurrir en conflicto de interés. Esa responsabilidad le es exigible en su carácter individual, como socio o accionista, conforme los fines y propósitos que se pretenden obtener por las normas aplicables, de desalentar tomar ventaja, directa o indirectamente en el desempeño de la profesión. Es claro que la sociedad actúa a través de sus socios, y que el control de un accionista sobre los asuntos corporativos surge de su posición y funciones en la corporación. El récord sustenta sus actuaciones como socio y el control que ejercía en Isaacar, Inc., a través de lo cual hizo el negocio con la Compañía de Desarrollo Cooperativo.

Todo lo anterior derrota la contención del señor Malavé a los efectos de que no medió conflicto de interés. Los hechos enmarcan claramente en lo dispuesto en el Artículo 3 incisos (a), (b) y (c) del Reglamento de Etica de los Contadores Públicos Autorizados. En síntesis, dicha disposición establece que el concepto de persona independiente con relación a la empresa sobre la que emite opinión sobre estados financieros, aunque no puede definirse con certeza, conlleva una connotación de integridad; que el contador público autorizado no es independiente de la empresa si posee o adquiere cualquier interés directo o indirecto en la empresa; y que dicho profesional no puede dedicarse conjuntamente con su profesión a negocios incompatibles o inconsistentes con la misma.

Tampoco tiene razón el recurrente en argumentar que la Junta de Contabilidad carecía de jurisdicción, luego de dilatar el proceso por siete años. Se refiere a varias solicitudes de investigación previas a ésta, que no culminaron en presentación formal de querella. Se ampara en la sección 3.3(g) de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2163(g), que establece que todo caso sometido a un procedimiento adjudicativo ante una agencia deberá resolverse dentro de seis (6) meses desde su radicación, excepto por circunstancias excepcionales.

Es claro del lenguaje de la aludida disposición que no se trata de un término jurisdiccional. Además, la disposición no aplica a la fase investigativa de los procesos administrativos. La querella fue presentada el 21 de agosto de 1995 y la vista se celebró el 14 de agosto de 1996. Esta fue precedida de trámites procesales administrativos. La resolución fue emitida en enero de 1997. Si bien lo fue en exceso de los noventa días, desde que se celebra la vista, que dispone la sección 3.14 de la Ley Núm. 170, *supra*, sec. 2164, este término tampoco es jurisdiccional, ya que la misma disposición permite que sea renunciado por las partes, o ampliado por su consentimiento o por justa causa.

No tratándose de términos jurisdiccionales, no tiene razón el recurrente en que la tardanza en el procedimiento amerita la revocación de la sanción.

Coincidimos con el Procurador General en que no se violó el debido proceso de ley si el informe del oficial examinador, aunque no le fue notificado al recurrente, está disponible a él en el expediente administrativo. Lo importante es que tenga oportunidad de conocer las bases de la resolución recurrida, y nada hay en el récord que señale que no tuvo esa oportunidad. Además, la resolución recurrida cumplió con las disposiciones de la sección 3.14, *supra,* conteniendo, entre otros renglones, determinaciones de hechos y conclusiones de derecho, que claramente tienen que basarse en el informe del oficial examinador. Si el recurrente entendía que esas determinaciones no estaban sustentadas en el informe, pudo haber examinado éste. Sección 3.1(d), Ley Núm. 170, *supra,* 3 L.P.R.A. sec. 2151(d).

## III

Consideremos el planteamiento del recurrente que la sanción de impedirle renovar su licencia por diez (10) años es extremadamente severa e irrazonable. Respecto a este señalamiento, la Junta de Contabilidad somete a este foro la determinación de si la sanción es proporcional a la conducta del recurrente.

Es un principio ampliamente conocido que las conclusiones o interpretaciones de los organismos administrativos merecen gran consideración y respeto. El alcance de la función revisora se limitará a determinar si la decisión resulta arbitraria, caprichosa y carente de base racional en el expediente. *Maisonet Felicié v. Corp. del Fondo del Seguro del Estado,* ___ D.P.R. ___ (1996), **96 J.T.S. 169**, pág. 454; *Misión Industrial v. Junta de Planificación,* 140 D.P.R. (1996), **96 J.T.S. 70**, pág. 1126.

El Estado, como manifestación de su amplio poder regulador, posee discreción para controlar la práctica de las profesiones. Es por esto que se crean organismos a quienes se les delega dicho poder regulador, teniendo, pues, el Estado y sus juntas examinadoras amplia discreción para fijar las normas que deben regir la admisión o remoción de una persona del ejercicio de determinadas profesiones, guardando siempre gran respeto a las condiciones impuestas por la Asamblea Legislativa para proteger el interés público, *Pueblo v. Villafañe,* 139 D.P.R. ___ (1995), **95 J.T.S. 132;** *Asociación de Doctores v. Dra. Ivette Morales,* 132 D.P.R. ___ (1993), **93 J.T.S. 12**, pág. 10348. El legislador, al delegar en la Junta de Contabilidad, mediante la Ley Núm. 293 de 15 de mayo de 1945, según enmendada, 20 L.P.R.A. secs. 771 y ss., el poder de regular la concesión y denegación de licencias le concedió un margen amplio de discreción para actuar de acuerdo a su conocimiento especializado, lo que deberá ejercer de forma razonable. Los tribunales tienen la facultad de revocar o modificar sus determinaciones para ajustarlas a un criterio de razonabilidad, *Debien v. Junta de Contabilidad,* 76 D.P.R. 96 (1954).

Analizadas las circunstancias de este caso, entendemos que el término de diez (10) años por el cual le está vedado al señor Malavé renovar su licencia de contador, resulta excesivo y debe ser reducido. Lo anterior, en atención al término que tomó el trámite y resolución de la controversia, la adecuacidad

de la sanción con la conducta imputada, y el carácter aleccionador del proceso. Estimamos razonable que la sanción sea modificada para impedirle al señor Malavé la renovación de su licencia por un término de dos (2) años, a partir del 14 de enero de 1997.

Por todo lo antes expuesto, expedimos el auto a los únicos fines de modificar la sanción impuesta, la que se reduce a dos (2) años, a partir del 14 de enero de 1997, y así modificada, se confirma.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General